**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

COZUMEL CARIBE, S.A. de C.V.,

                Debtor in a Foreign Proceeding.

Chapter 15

Case No. 10-_____

## APPLICATION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF FOREIGN REPRESENTATIVE AND FOREIGN MAIN PROCEEDING AND ADDITIONAL RELIEF PURSUANT TO 11 U.S.C. § 1521

Nemias Esteban Martinez Martinez ("Martinez"), in his capacity as duly authorized inspector and putative foreign representative of Cozumel Caribe, S.A. de C.V. ("Cozumel Caribe"), whose reorganization proceeding under Mexico's *Ley de Concuros Mercantiles* (the "Mexican Insolvency Act") currently is pending before the Third District Court for the State of Quintana Roo (the "Concurso Mercantil Proceeding"), respectfully submits this application (the "Recognition Application") seeking entry of an order (i) recognizing the Concurso Mercantil Proceeding as a "foreign main proceeding" under sections 1502(4), 1504, 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); (ii) recognizing Martinez as the "foreign representative" of Cozumel Caribe in connection with the Concurso Mercantil Proceeding; and (iii) granting additional relief under sections 1521(a)(4), 1521(a)(5) and 1521(b) of the Bankruptcy Code.

In support of the Recognition Application, Martinez has filed contemporaneously herewith the *Declaration of Agustin García Bolaños Cacho, As Chairman Of The Board of Directors Of Cozumel Caribe, In Support Of (I) Application Under Chapter 15 Of The Bankruptcy Code For Recognition Of Foreign Representative And Foreign Main Proceeding And For Additional Relief Pursuant To 11 U.S.C. § 1521 And (II) Ex Parte Application For*

*Entry Of Provisional Relief Pursuant To 11 U.S.C. § 1519* (the "Garcia Declaration") and the

*Declaration Of Nemias Esteban Martinez Martinez As Putative Foreign Representative, In*

*Support Of Application Under Chapter 15 Of The Bankruptcy Code For Recognition Of Foreign*

*Representative And Foreign Main Proceeding And Additional Relief Under 11 U.S.C. § 1521*

(the "Martinez Declaration"), which are incorporated herein by reference, and respectfully

represents as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York, dated July 10, 1984. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2.     Venue is properly located in this district pursuant to 28 U.S.C. § 1410.

3.     The statutory predicates for the relief sought herein are sections 1502(4), 1504,

1515, 1517 and 1521 of the Bankruptcy Code.

## BACKGROUND

**I.     Corporate Background**

    **A.     Company Structure**

4.     Cozumel Caribe is a Mexican company that was incorporated as a variable stock

corporation, through public deed number 34,008, issued on January 11, 1994, by Ramón

Aguilera Soto Esq., notary public 118 in and for the Federal District of Mexico, whose first

transcript was duly registered in the Public Registry of Commerce of the Federal District under

entry number 183418.

5.  Cozumel Caribe renders tourism and hostelry services by and through the Hotel Park Royal Cozumel (the "Hotel"), which is a beachfront property located in Cozumel, Mexico.[1]

### B.  **Appointment of Governing Body**

6.  Cozumel Caribe's Board of Directors is comprised as follows:

Chairman:  Agustin Garcia Bolaños Cacho

Treasurer:  Juan Carlos Acuña Duran

Secretary:  Jaime Marquez Vargas

Independent Director:  Victor A. Duva

Independent Director:  Jennifer A. Shwartz

## II.  **The Loan Agreements**

7.  On October 3, 2006, Cozumel Caribe and seven of its affiliates (collectively, the "Issuers")[2] executed a promissory note A for the purpose of documenting a debt of $90,900,000.00 USD in favor of Bear Stearns Commercial Mortgage Inc. and a promissory note B for the purpose of documenting a debt of $12,100,000.00 USD in favor of Bear Stearns Commercial Mortgage Inc. (collectively, the "Promissory Notes") for a total amount of $103,000,000 USD.

---

[1] On October 3, 2006, during a meeting of the stockholders, Cozumel Caribe's bylaws were amended to provide the following:

> a) CORPORATE PURPOSE:  Pursuant to the provisions of clause two of the bylaws, the corporate purpose of Cozumel Caribe is essentially the rendering of hostelry services and, in general, all types of tourism services, as well as the owning, leasing, utilization, exploitation and running, whether directly, or through third parties, of real estate intended for hostelry.

> b) ADDRESS:  Pursuant to the provisions of clause three of the bylaws, the corporate address of Cozumel Caribe is located in Mexico City.  While the head office is located in Mexico City, Federal District, the Hotel Park Royal Cozumel located at Carretera Costera Sur sin número, Cozumel, Quintana Roo, is the company's principal place of business.

[2] The eight Issuers are:  Cozumel Caribe, S.A. de C.V.; Promotora de Inmuebles del Caribe, S.A. de C.V.; Consorcio Inmobiliario Cancún, S.A. de C.V.; Desarrollo Turístico Pirámides Cancún, S.A. de C.V.; Inmobiliaria Cancún Caribe, S.A. de C.V.; Comercializadora Y Desarrolladora Ocean, S.A. de C.V.; Desarrolladora Inmobiliaria del Sur, S.A. de. C.V.; and Servicios Administrativos Etisa, S.A. de C.V.

8.    In connection with the Promissory Notes, Cozumel Caribe, the other Issuers and LaSalle Bank, N.A. ("LaSalle"), as trustee, entered into a note indenture, dated October 3, 2006 (the "Note Indenture") and a cash management agreement, dated October 3, 2006 (the "Cash Management Agreement," and together with the Promissory Notes and the Note Indenture, the "Loan Documents").

9.    With the aim of receiving all the income generated by the operations of Cozumel Caribe and the other Issuers, as required by the Loan Documents, a U.S. dollar account was opened to collect U.S. dollar income (the "Dollar Lockbox Account") and a Mexican peso account was opened to collect Mexican peso income (the "Peso Lockbox Account"). The Dollar Lockbox Account was held initially by LaSalle, which acted directly as a deposit bank. The Peso Lockbox Account was opened in Mexico with HSBC México S.A.

10.    Further, the Cash Management Agreement created a centralized account initially controlled by LaSalle (the "Cash Management Account"). The Cash Management Account is the final destination for all the income generated from the operation of Cozumel Caribe and the other Issuers, pursuant to clause 2.1 of the Cash Management Agreement, in which all the corresponding funds in the Peso and Dollar Lockbox Accounts are centralized. The income accumulated in the Cash Management Account, in turn, is deposited in subaccounts.

11.    Once the subaccounts were opened, Cozumel Caribe and the other Issuers issued instructions to each and every one of their clients, tourism industry wholesalers, debtors, travel agencies and credit card operators to deposit any amounts owed to Cozumel Caribe and the other Issuers in either the Peso Lockbox Account or the Dollar Lockbox Account.

12.    As a result of these instructions Cozumel Caribe and the other Issuers do not directly receive the income generated by the pursuit of their corporate purpose; instead all

income was placed under the direct and exclusive control of the trustee through the direct transfer of funds by clients and operators to the Dollar Lockbox Account, the Peso Lockbox Account, and eventually, the Cash Management Account.

13. With respect to Cozumel Caribe, in particular, income in Mexican pesos generated by its operations is controlled and handled in the following manner:

> a) All the income generated in Mexico is kept in deposit with HSBC México S.A. in the Peso Lockbox Account. The funds include not only money belonging to Cozumel Caribe but also funds collected, earmarked for various taxes, including the Value Added Tax and State Accommodation Tax.

> b) No income is received directly by Cozumel Caribe for the operation and exploitation of its business as all income is collected into the Peso Lockbox Account. In order for Cozumel Caribe to continue the operation of the business, it is necessary for the balance of the Peso Lockbox Account to be remitted to Cozumel Caribe.

> c) Once operating costs have been covered and the collected taxes such as Value Added Tax and Accommodation Tax have been paid, the surplus of the amounts deposited in the Peso Lockbox Account may be converted into dollars and transferred to the Cash Management Account.

> d) Funds sufficient to satisfy the expenses incurred in connection with the day-to-day running of Cozumel Caribe's business and the businesses of the other Issuers, including those funds earmarked to pay all relevant taxes, and which is collected in the Peso Lockbox Account, must be delivered to Cozumel Caribe in accordance with instructions issued by the trustee, its agent or servicer after the yearly budget of the business is approved.

14. Income in U.S. dollars generated by Cozumel Caribe's operations is controlled and handled in the following manner:

> a) All income in dollars generated by Cozumel Caribe is deposited into the Dollar Lockbox Account, whose balances are transferred monthly to the Cash Management Account.

> b) The Cash Management Account is run through a number of different subaccounts, including the following:

1) Tax and Insurance Escrow Fund; 2) Deposit Bank or Agent Expense Fund; 3) Debt Servicing Fund; 4) Replacement Reserve Fund; 5) Interest Fund; 6) Extraordinary Expense Fund; and 7) Surplus Cash Flow.

c) When a payment for any expenses needs to be made, pursuant to the Cash Management Agreement, the trustee must deliver the funds to Cozumel Caribe. As a result, if it becomes necessary to pay taxes, insurance premiums or water rates, or buy new hotel furniture, these amounts must be released by the trustee so that Cozumel Caribe is able to make the corresponding payments.

## III.  Reasons Necessitating Filing The Concurso Mercantil Proceeding

15.  The recent world recession and crisis in the Mexican tourism sector has brought about a reduction in the flows of cash required to cover the costs and expenses of operating tourism-related businesses.

16.  The crisis in the Mexican tourism industry stems not only from the world recession and its impact on Mexico, but also: (i) the crime wave unleashed in response to efforts by the Mexican government to combat drug related and other criminal activities; (ii) the devaluation of the Mexican peso; and (iii) the AH1N1 flu epidemic.

17.  As a result, the number of foreign travelers was significantly reduced. Data released by the Ministry of Tourism on February 15, 2010, revealed that Mexico's income from foreign tourism was down 15.1%. During the 2009 fiscal year, Mexico collected two billion dollars less than the previous year in connection with the tourism industry.

18.  Further, the harm caused to Caribbean-based tourism by the influenza epidemic was particularly serious given that the outbreak led to widespread reporting and, as a result, had a negative impact on the region's image.

19.  Compounding this problem, the U.S. Department of State issued warnings about traveling to Cancun, Cozumel and Playa del Carmen, in light of the increasing number of

reported crimes, especially regarding violent crime such as rape, as well as incidents involving the theft of the property from North American tourists in this region.

20.     The combination of these events resulted in a drastic drop in hotel occupancy, which gave rise to the need to take emergency steps and seek the support of a number of financial and commercial agents in order to face the crisis with a united front, including: (a) staff cutbacks; (b) operating cost reductions; (c) negotiation of more favorable conditions with hostelry suppliers; (d) formulation of new commercial strategies to increase presence in the domestic and international hostelry market; (e) new sales and "all inclusive" accommodation plans; and (f) participation in joint hostelry industry programs to promote tourism.

### A.     The Improper Withholding of Funds

21.     The solvency crisis caused by the abovementioned events was worsened by the direct actions of CT Investment Management Co., LLC ("CTIM"), as special servicer and on behalf of the lenders (the "Lenders"), who unilaterally, unlawfully and deceitfully withheld the funds of Cozumel Caribe located in the Dollar Lockbox Account, the Peso Lockbox Account and the Cash Management Account, thereby hampering the operations of the company, in the following manner:

> a) The amounts collected in the Cash Management Account corresponding to Value Added Tax and Accommodation Tax, which belong to various Mexican federal and state governments have been withheld by CTIM, on behalf of the Lenders, without cause.

> b) As from 2010 (*and unlike the administration of the previous fiscal year*), CTIM, on behalf of the Lenders, has refused to approve the expenditure estimate regarding the payment of taxes collected from the operations of the Hotel (Value Added Tax and Accommodation Tax).

> c) Cozumel Caribe has issued several written requests for the delivery of said taxes, notably on January 29, February 5 and 11, March 3 and 10, and April 9, 21 and 30, 2010, explaining to LaSalle, Wells Fargo Bank, N.A., as master servicer, and CTIM, that the unlawful withholding of said tax could comprise a criminal act under Mexican law to the detriment of

Cozumel Caribe. However, to this date, no satisfactory reply to these requests has been received.

d) As has been explained above, the money collected from the public through the transfer of Value Added Tax does not belong to Cozumel Caribe, but instead to the Mexican tax collection authorities and the Lenders have no right to dispose of it.

e) CTIM, on behalf of the Lenders, has also refused to release the amounts required to pay the charges of Mexico's Federal Land Maritime Zone, which are obviously vital for the running of a beach hotel and must hence be paid from the income generated by the Hotel.

f) Upon information and belief, CTIM, on behalf of the Lenders has refused to release these amounts based upon the argument that payment for the use of Mexico's Federal Land Maritime Zone is not an operating cost of a hotel located on the beach. This disbursement, even if it does not pertain to a statement of income for the purposes of rating the hotel operator, is clearly a cost inherent to the running of the hotel and vital in every sense, given that if Cozumel Caribe were to lose the right to use the beach this would virtually be tantamount to its total elimination from the market.

g) At the same time, CTIM, on behalf of the Lenders, has refused to release funds to pay the fees of the hotel operator (*Operación y Supervisión de Hoteles S.A. de C.V.*), which are essential for the very subsistence of Cozumel Caribe's business operations.

h) CTIM, on behalf of the Lenders, has also refused to provide any refunds to pay water rates (which were being refunded on a regular basis), which must be charged to the Tax Reserve of the Cash Management Account. Even though Cozumel Caribe and the other Issuers have demonstrated that they have so far paid $1,074,744.02 USD to this end, this payment has not been refunded to them, once again without any explanation whatsoever.

i) Also, Cozumel Caribe issued a timely request for the release of the repair reserve funds, but this amount has not been released even though the need for this has been explained using the appropriate report and documentation.

j) The reply to the request for the release of the repair reserve funds was, quite simply that: "The best capitals for any property must be paid by [the owner]" without quoting or explaining the basis for this decision, which is contrary to the text of Article 10 of the Note Indenture. Then CTIM added in a plainly offensive tone *"as long as [the owner] doesn't change its*

*request, preferably in English this time, the returning of the funds will be suspended."*

k) Notwithstanding the fact that the request was issued in English and that, as a result, the reply is quite absurd, CTIM cannot just leave the request in a state of suspension without explaining the reasons for its refusal, or returning what, in its view, does not correspond because it is a "capital repair" and reserving any items in doubt.

l) Cozumel Caribe has made a significant effort to survive by preserving its business and the many jobs it creates, while CTIM has blatantly ignored numerous letters, refusing to afford Cozumel Caribe any satisfactory explanation as to the denial of the repeated requests to give back money that does not belong to it and which is vital for the continuation of Cozumel Caribe's operations.

22.     In brief, CTIM, on behalf of the Lenders has unlawfully withheld Cozumel Caribe's cash flow, by failing to place at Cozumel Caribe's immediate disposal the taxes transferred to it, as well as the funds required to cover the day-to-day obligations of the business (water rates, repair work, beach charges, hotel fees), which has substantially worsened Cozumel Caribe's cash flow crisis.

## IV.  Economic Accounting and Financial Situation

23.     As of March 31, 2010, according to unaudited internal financial statements, Cozumel Caribe had total assets worth $658,201,860.00 Mexican pesos, and direct liabilities of $367,604,641.00 Mexican pesos.

24.     Additionally, there exists liability derived from the Promissory Notes in the total amount of $103,000,000.00 USD.

25.     The audited financial statements for the years 2006, 2007 and 2008, as well as the unaudited financial statement as of the close of 2009, indicate that:

a) In the fiscal year ending December 31, 2006, the company reported profits of $161,138,000.00 (Mexican pesos);

b) In the fiscal year ending December 31, 2007, the company reported a loss of $57,345,000.00 (Mexican pesos);

c) In the fiscal year ending December 31, 2008, the company reported a loss of $50,260,000.00 (Mexican pesos);

d) In the fiscal year ending December 31, 2009, the company reported a pre-tax profit of $24,499,882.00 (Mexican pesos).

26.     While current assets as of March 31, 2010, were $16,283,919.00 Mexican pesos, current liabilities amounted to $24,588,842.00 Mexican pesos. Of said liabilities, $5,400,914.00 Mexican pesos are accounted for by past due debts. Of the current assets, only $1,080,685.00 Mexican pesos are accounted for by available assets pursuant to the terms of article 10 items a, b, c and d of the Mexican Insolvency Act, especially given that Cozumel Caribe's accounts receivable ($13,103,129.00 Mexican pesos) are not available to the company because they are instead being withheld in the Cash Management Account.

27.     Accordingly, Cozumel Caribe lacks current assets, as referred to in article 10 point II of the Mexican Insolvency Act, to cover 80% of its current liabilities.

## V.     The Filing of the Petition Commencing Concurso Mercantil Proceeding

28.     Faced with the financial challenges stated above, on April 27, 2010, the stockholders representing one hundred percent (100%) of the capital stock of Cozumel Caribe authorized, among others, Agustín García Bolaños Cacho, who is the company's attorney-in-fact, as well as the Chairman of its Board of Directors, to file a petition commencing the Concurso Mercantil Proceeding in the Third District Court for the State of Quintana Roo (the "Mexican Court").

29.     On May 27, 2010, the Mexican Court entered an initial order (the "Initial Mexican Order") which stayed any actions against Cozumel Caribe's assets located in both Mexico and the United States. The Initial Mexican Order provided, in part, as follows:

> a.     The prohibition of the transferring and/or depositing of securities and funds in the Peso Lockbox Account and the Dollar Lockbox Account under the control of LaSalle and/or Wells Fargo, N.A. and/or CT

Investment Management Corp., on the basis of which said creditors collect their income for the normal operations of Cozumel Caribe;

    b.    The authorization of the depositing of the payments of Cozumel Caribe's clients, wholesalers, and/or hotel operators in connection with the company's normal operations;

    c.    The prohibition of LaSalle and/or Wells Fargo, N.A. and/or CT Investment Management Corp. from using the balance, reserve, funds or any amounts deposited in the Pesos Lockbox Account and the Dollars Lockbox Account or in the Cash Management Account or the subaccounts thereof to pay the loan of $103,000,000 granted by Bear Stearns Commercial Mortgage Inc. on October 3, 2006, as well as any legal accessories derived from it; and

    d.    The seizure of the full balance of the Cash Management Account and the subaccounts, so that they may be kept in a sight deposit within Mexico until such time as a conciliator monitors the utilization of such funds.

30.    On June 22, 2010, the Director General of Mexico's Federal Institute of Business Reorganization Specialists appointed Martinez as the inspector of Cozumel Caribe (the "Visitador Appointment").

31.    In accordance with the Mexican Insolvency Act and pursuant to the Visitador Appointment, Martinez was vested with the authority to request certain preventative remedies from the Mexican Court with respect to his oversight of Cozumel Caribe, including: (i) the prohibition to pay any obligations that matured before the business reorganization petition date, (ii) the suspension of any enforcement proceeding on Cozumel Caribe's assets and rights, (iii) the prohibition that Cozumel Caribe dispose of or encumber the principal assets of the business, (iv) the seizure of property, and (v) the prohibition to transfer funds or securities to third parties.

32.    Additionally, pursuant to Article 282 of the Mexican Insolvency Act, Martinez was vested with the authority empowered to act in a foreign State, to the extent permitted by the applicable foreign law, on behalf of Cozumel Caribe.

33. The Concurso Mercantil Proceeding offers the most practical means to achieve an equitable resolution of Cozumel Caribe's liabilities, and to restructure, rather than liquate its business.

## RELIEF REQUESTED

34. For the reasons set forth herein, Martinez respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A,** (i) recognizing the Concurso Mercantil Proceeding as "a foreign main proceeding" pursuant to 11 U.S.C. §§ 1517(a) and (b)(1); (ii) recognizing Martinez as the duly appointed "foreign representative," as defined in 11 U.S.C. § 101(24), of Cozumel Caribe; and (iii) granting additional relief under sections 1521(a)(4), 1521(a)(5) and 1521(b) of the Bankruptcy Code.

## GROUNDS FOR RELIEF REQUESTED

35. Chapter 15 of the Bankruptcy Code is designed to assist foreign representatives to protect assets located in the United States that belong to a foreign debtor that has commenced insolvency proceedings in a foreign jurisdiction. *See* 11 U.S.C. § 1501(b). Among the purposes of Chapter 15 are (i) to encourage cooperation between U.S. and foreign courts; (ii) to promote fair and efficient administration of cross-border insolvencies that protect creditors, debtors, and other parties-in-interest; and (iii) to protect and maximize the value of the debtor's assets. Consistent with these principles, Martinez commenced this Chapter 15 Case to obtain recognition of the Concurso Mercantil Proceeding. Martinez anticipates that the Chapter 15 Case will complement Cozumel Caribe's primary proceedings in Mexico to ensure the effective and economic administration of Cozumel Caribe's restructuring efforts. Further, Martinez submits that recognition of the Concurso Mercantil Proceeding will not undermine the rights that United States creditors typically would enjoy in a Chapter 11 proceeding.

36.     Accordingly, Martinez submits that recognition of Martinez as Cozumel Caribe's "foreign representative" and recognition of the Concurso Mercantil Proceeding as a "foreign main proceeding" are consistent with the purpose of Chapter 15 and will allow Cozumel Caribe to restructure in the most efficient manner without jeopardizing creditors' rights.

**I.      The Requirements For Recognition Are Satisfied**

37.     Section 1517(a) of the Bankruptcy Code provides that a court "shall" enter an order granting recognition of a foreign proceeding if:

> (i)   such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (ii)  the foreign representative applying for recognition is a person or body; and
>
> (iii) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Section 1517(b) provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Martinez submits that all of the requirements for recognition of a foreign main proceeding are satisfied.

**A.      The Concurso Mercantil Proceeding Is A Foreign Proceeding**

38.     The Concurso Mercantil Proceeding qualifies as a "foreign proceeding" under Chapter 15 of the Bankruptcy Code. Section 101(23) defines a foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

39.     The Concurso Mercantil Proceeding meets this definition because it is a collective administrative proceeding governed by the Mexican Insolvency Act, which establishes a

reorganization process similar to that which exists under chapter 11 of the Bankruptcy Code by providing a mechanism for the recognition and prioritization of creditor claims and for the distribution of estate assets in accordance with that ranking. Additionally, Article 290 of the Mexican Insolvency Act specifically provides that "foreign creditors shall have the same rights as Mexican creditors in relation to the commencement of a proceeding in this State and the participation in it pursuant to this act." *See In re Overnight and Control Commission of Avanzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (finding that a case commenced under Spain's 1922 Suspension of Payments Act was a foreign proceeding since the proceeding was a collective judicial proceeding concerning insolvency and the adjustment of debt in which the debtor reaches a payment agreement with its creditors subject to court approval).

40.     Further, pursuant to the Initial Mexican Order, the Mexican Court retained its authority to issues any necessary order in connection with the Concurso Mercantil Proceeding and, therefore, Cozumel Caribe's assets are "subject to control or supervision by a foreign court" as required by section 101(23) of the Bankruptcy Code.

41.     Accordingly, the Concurso Mercantil Proceeding qualifies as a foreign proceeding as required by section 1517 of the Bankruptcy Code.

**B.      Martinez Is A "Foreign Representative"**
**As Defined In The Bankruptcy Code**

42.     Further, Martinez submits that the Chapter 15 Case was commenced by a duly appointed and authorized "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, which provides:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

43.     Pursuant to the Visitador Appointment, Martinez was appointed to act as the inspector of Cozumel Caribe. By virtue of this appointment and the Mexican Insolvency Act, Martinez is the person charged with protecting the interests of Cozumel Caribe's creditors and is responsible for, among other things, administering claims against Cozumel Caribe and representing Cozumel Caribe in all legal transactions in connection with the Mexican Bankruptcy Proceeding. Pursuant to Article 282 of the Mexican Insolvency Act, Martinez is empowered to act as Cozumel Caribe's foreign representative, as defined under section 101(24) of the Bankruptcy Code, and is therefore entitled to commence this case under Chapter 15 of the Bankruptcy Code.

### C.     The Concurso Mercantil Proceeding Is A Foreign Main Proceeding

44.     The Court should recognize the Concurso Mercantil Proceeding as a "foreign main proceeding" as such term is defined in section 1517(b)(1) of the Bankruptcy Code.

45.     Section 1517(b)(1) of the Bankruptcy Code provides that a "foreign main proceeding" is a "foreign proceeding" pending in the country where the debtor has its center of its main interests. 11 U.S.C. § 1517(b)(1). As further discussed above, the Concurso Mercantil meets the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code.

46.     Courts have held that the concept of "center of main interests" is similar to a "principal place of business" in U.S. legal parlance. *See, e.g., Bear Stearns High-Grade Structured Credit Strategies Master Fund*, 389 B.R. 325, 336 (S.D.N.Y. 2008) (noting that "[a]n early bankruptcy court decision that addressed the determination of COMI specifically discusses the [regulation adopting the EU Convention on Insolvency Proceedings] language and properly

equates it to the United States' concept of 'principal place of business.'" (citing *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) (same)).

47.     Section 1516(c) of the Bankruptcy Code sets forth a presumption that, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be its center of the debtor's main interests. 11 U.S.C. § 1516(c); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund*, 374 B.R. 122, 127 (Bankr. S.D.N. Y. 2007), *aff'd* 389 B.R. 325 (S.D.N.Y. 2008). Here, Cozumel Caribe's registered office is in Mexico, establishing the presumption that Cozumel Caribe's center of main interests is in Mexico.

48.     Moreover, this Court has found that the registered presumption provided by section 1516(c) of the Bankruptcy Code, plus additional evidence that the center of main interests is in the same country, will satisfy a foreign representative's burden of proof under section 1516(c) of the Bankruptcy Code. *See, e.g., Oversight and Control Commission of Avanzit*, 385 B.R. at 539 (debtor organized under Spanish law, and having registered office and large office building lease in Madrid, had its center of main interests in Spain).

49.     In this case, the registered office presumption is bolstered by the ample supporting evidence that Cozumel Caribe's center of its main interests is in Mexico. Its headquarters are located in Mexico City and the Hotel is located in Cozumel, Quintana Roo, Mexico. While Cozumel Caribe has some assets in the United States, in the form of bank accounts and litigation claims, the main asset and sole revenue generator of Cozumel Caribe is the Hotel located in Mexico. Moreover, Cozumel Caribe has no offices or employees in the United States or any other country.

50.     For the foregoing reasons, Martinez respectfully represents that Cozumel Caribe's center of main interests is located in Mexico, and that recognition of the Concurso Mercantil Proceeding as a "foreign main proceeding" is appropriate pursuant to 11 U.S.C. § 1517(b).

**D.     The Procedural Requirements of 11 U.S.C. § 1515 Are Satisfied**

51.     This Chapter 15 Case was properly commenced, as required by sections 1504 and 1509 of the Bankruptcy Code, by the filing of this Recognition Application, accompanied by all documents and statements required by sections 1515(b) and (c) of the Bankruptcy Code. *See* 11 U.S.C. § 1515.

52.     In satisfaction of section 1515(b) of the Bankruptcy Code, certified translated copies of the Initial Mexican Order and the Visitador Appointment are attached to the Martinez Declaration as Exhibits 1 and 2, respectively, affirming the existence of the Mexican Bankruptcy Proceeding and Martinez's appointment.  Pursuant to section 1515(c) of the Bankruptcy Code the *Statement of Foreign Representative Pursuant To 11 U.S.C. § 1515(c) Identifying Foreign Proceedings*, dated July 19, 2010, "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative" was filed concurrently with this Recognition Application.  11 U.S.C. § 1515(c).  Pursuant to Bankruptcy Rule 1007(a)(4), the *Statement of Foreign Representative Listing Information Pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure*, dated July 19, 2010, listing the names and addresses of all required parties to the Chapter 15 Case, was filed concurrently with this Recognition Application.

53.     Further, section 1516 of the Bankruptcy Code provides that if the foreign order "indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume." 11 U.S.C. § 1516.  The Initial Mexican Order and the Visitador Appointment meet these criteria and therefore Martinez is

entitled to the benefit of the presumption that he is a foreign representative and that the Concurso

Mercantil Proceeding is a foreign proceeding.

## II.   Relief Under Section 1520 Is Authorized Upon Recognition of the Concurso Mercantil Proceeding As A Foreign Main Proceeding

54.    Section 1520 of the Bankruptcy Code provides that certain specified relief, such

as application of the automatic stay and the ability to regulate post-petition transfers of the

debtor's property that is within the territorial jurisdiction of the United States, becomes effective

automatically upon recognition of a foreign main proceeding.  11 U.S.C. § 1520.  Martinez posits

that no further action is needed to avail Cozumel Caribe of the protections contained within 11

U.S.C. § 1520.

## III.   The Relief Requested Under Section 1521 Is Necessary And Appropriate

55.    In addition to recognition of the Concurso Mercantil Proceeding as a foreign main

proceeding and of Martinez as Cozumel Caribe's foreign representative, relief pursuant to

section 1521 of the Bankruptcy Code is requested.  Section 1521(a) of the Bankruptcy Code

provides that, upon recognition of a foreign main proceeding, a court may grant relief to a

foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect

the assets of the debtor or the interest of creditors. . . ." 11 U.S.C. § 1521(a).

56.    Accordingly, Martinez requests relief pursuant to sections 1521(a)(4), 1521(a)(5)

and 1521(b) of the Bankruptcy Code.  Section 1521(a)(4) of the Bankruptcy Code authorizes a

foreign representative to take discovery in connection with the debtor's assets and affairs.  11

U.S.C. § 1521(a)(4).  The examination of witnesses, collecting evidence and delivery of

information concerning Cozumel Caribe's assets, affairs, rights, obligations, or liabilities

provided under section 1521(a)(4) of the Bankruptcy Code is appropriate and may be necessary

with respect to Cozumel Caribe.  Substantial questions and concerns exist with respect to the

Dollar Lockbox Account, the Peso Lockbox Account and the Cash Management Account, in particular the reasons for the ongoing withholding of monies intended for the payment of taxes due under Mexican law. This ability to gather facts is essential for Martinez to carry out his obligations under the Mexican Insolvency Act, to protect Cozumel Caribe's assets and to serve the interests of Cozumel Caribe's creditors. Therefore, Martinez respectfully requests authority to seek discovery under section 1521(a)(4) of the Bankruptcy Code.

57.    Martinez also requests relief under section 1521(a)(5) and 1521(b) of the Bankruptcy Code. Section 1521(a)(5) of the Bankruptcy Code provides that, upon the recognition of a foreign proceeding, the foreign representative may seek to be entrusted with "the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States." 11 U.S.C. § 1521(a)(5). Section 1521(b) of the Bankruptcy Code entrusts the foreign representative with the power to distribute the debtor's U.S. assets. Entrusting Martinez to administer and distribute Cozumel Caribe's U.S. assets along with Cozumel Caribe's other assets in accordance with the Mexican Bankruptcy Act is both reasonable and necessary as affirmative control over such assets is directly related to the "task of administering and realizing assets of the debtor within the U.S." *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009). The court in *Atlas Shipping* concluded that ordering the entrustment of the debtor's U.S. assets was "more economical and efficient in that it would permit all of Atlas' creditors worldwide to pursue their rights and remedies in one court of competent jurisdiction." *Id.* at 742. Further, the court held that such relief was not prejudicial to the rights of U.S. creditors since it was sufficient that such creditors could assert their rights to the funds in the foreign bankruptcy proceeding. *Id.*

58.     Given the existence of the Concurso Mercantil Proceeding as a foreign main proceeding, and Martinez's appointment as a foreign representative, Martinez submits that such entrustment would result in the most efficient administration of Cozumel Caribe's entire estate, including its assets located in the United States. This relief is also consistent with the relief ordered by the Mexican Court in the Initial Mexican Order, which provided for the seizure of the funds located in the Cash Management Account and the subaccounts so that they may be kept in a single deposit account in Mexico.

59.     Relief under section 1521(a) of the Bankruptcy Code is permissible and appropriate because, as required by sections 1521(b) and 1522, the interests of creditors of Cozumel Caribe, including U.S. creditors, are "sufficiently protected." 11 U.S.C. §§ 1521(b), 1522.

60.     Here, all creditors are sufficiently protected by the existence of the Concurso Mercantil Proceeding and this Chapter 15 Case. U.S. creditors will have an opportunity to participate fully in the Concurso Mercantil Proceeding and the distribution of the proceeds. A concurrent Chapter 15 proceeding would protect Cozumel Caribe's assets located in the United States to maximize such distribution. Thus, the benefits to Cozumel Caribe and its creditors clearly outweigh any potential detriment to individual creditors and the Court need not fashion further relief to provide "sufficient protection" pursuant to sections 1521(b) and 1522. *See generally In re Tri-Continental*, 349 B.R. at 637-40 (denying creditor's request for additional protective measures under section 1522 prior to the entrustment of funds to the foreign representative pursuant to section 1521(a)(5)).

## IV. The Proposed Notice And Request For A Hearing On The Recognition Application Is Appropriate

61.     Bankruptcy Rule 2002(q)(1) provides that a party is to be given 21 days' notice of a hearing to consider granting the relief requested in a chapter 15 application. FED. R. BANKR. P. 2002(q)(1). Bankruptcy Rule 9007 permits this Court to prescribe the time, form and manner in which notice shall be given. FED. R. BANKR. P. 9007.

62.     Martinez requests that the hearing on the Recognition Application be scheduled on a date that is the twenty-fourth (24th) day after the filing of the Recognition Application or as soon thereafter as this Court may be available. Notice of the hearing on the Recognition Application will be provided to those parties required to receive notice pursuant to Bankruptcy Rule 2002(q) or their counsel and to other interested parties by sending them a copy of the Recognition Application, supporting declarations, as well as the order to show cause requested by Martinez in the *Ex Parte Application Of Foreign Representative For Entry Of Provisional Relief Pursuant To 11 U.S.C. § 1519*, filed contemporaneously herewith, as well as such other information that will apprise interested parties of the provisional stay (if ordered), the status of the Chapter 15 Case, and the schedule of further proceedings. Martinez proposes to notify parties by electronic mail, overnight delivery or otherwise by U.S. mail.

63.     The above-described notice meets the requirements of Bankruptcy Rule 2002(q) because it is provided to the required parties within the proscribed time period, and it is also in keeping with this Court's "discretion to set the particularities of notice procedures" pursuant to Bankruptcy Rule 9007. *See In re Pierce*, 435 F.3d 891, 892 (8th Cir. 2006).

## MEMORANDUM OF LAW

64.     Martinez submits that the authorities cited herein are sufficient to grant the relief requested, but reserves the right to file a memorandum of law in support of this Recognition Application.

## NOTICE

65.     Martinez has provided notice of the Recognition Application, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee; (b) the Securities and Exchange Commission; (c) the trustee under the Note Indenture and the Cash Management Agreement; and (d) all other parties against whom Cozumel Caribe sought preliminary relief pursuant to Section 1519 of the Bankruptcy Code. In light of the relief requested, Martinez submits that no further notice is necessary.

## NO PRIOR REQUEST

66.     Martinez submits that no prior request for the relief sought in the Recognition Application has been made to this or any other court.

## CONCLUSION

WHEREFORE, Martinez respectfully requests that this Court, pursuant to the provisions of Chapter 15 of the Bankruptcy Code, enter an order substantially in the form attached hereto as Exhibit A: (i) granting recognition of the Concurso Mercantil Proceeding as a foreign main proceeding; (ii) recognizing Martinez as the foreign representative of Cozumel Caribe; (iii) granting relief under section 1520 of the Bankruptcy Code; (iv) granting relief under section 1521(a)(4) of the Bankruptcy Code, including the right to seek discovery regarding Cozumel Caribe's U.S. assets; (v) granting relief under sections 1521(a)(5) and 1521(b) of the Bankruptcy Code, including entrusting to Martinez the administration and realization of Cozumel Caribe's

U.S. assets, and the distribution of U.S. assets to Cozumel Caribe's creditors; and (vi) granting

such other and further relief as may be just and proper.

Dated: July 20, 2010
       New York, New York

                              Respectfully submitted,


                              /s/ Jeffrey R. Gleit
                              Jeffrey R. Gleit
                              Joshua Greenblatt
                              Matthew B. Stein
                              Kasowitz, Benson, Torres & Friedman LLP
                              1633 Broadway
                              New York, New York 10019
                              (212) 506-1700 (Telephone)
                              (212) 506-1800 (Facsimile)

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------

In re:                                          Chapter 15

COZUMEL CARIBE, S.A. de C.V.,                    Case No. 10-_____

        Debtor in a Foreign Proceeding.

------------------------------------------------

## ORDER GRANTING RECOGNITION OF FOREIGN
## REPRESENTATIVE AND FOREIGN MAIN PROCEEDING AND
## FOR ADDITIONAL RELIEF UNDER 11 U.S.C. § 1521

Upon the *Application Under Chapter 15 Of The Bankruptcy Code For Recognition Of*

*Foreign Representative And Foreign Main Proceeding And Additional Relief Pursuant To 11*

*U.S.C. § 1521* (the "Recognition Application"),[1] filed by Nemias Esteban Martinez Martinez

("Martinez") in his capacity as duly authorized inspector and putative foreign representative of

Cozumel Caribe, S.A. de C.V. ("Cozumel Caribe"), a debtor in a currently ongoing

reorganization proceeding in Mexico (the "Concurso Mercantil Proceeding"), pending before the

Third District Court for the State of Quintana Roo (the "Mexican Court"), seeking (i) recognition

of the Concurso Mercantil Proceeding as "a foreign main proceeding," (ii) recognition of

Martinez as the duly appointed "foreign representative" of Cozumel Caribe, and (iii) additional

relief under sections 1521(a)(4), 1521(a)(5) and 1521(b) of the Bankruptcy Code; and upon the

hearing on the Recognition Application; and this Court's review and consideration of the

Recognition Application, the Garcia Declaration, and the Martinez Declaration; IT IS HEREBY

FOUND AND DETERMINED THAT:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Recognition Application.

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated July 10, 1984.

B.     The consideration of the Recognition Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

C.     Venue is proper in this District pursuant to 28 U.S.C. § 1410.

D.     Good, sufficient, appropriate and timely notice of the filing of the Recognition Application and the hearing on the Recognition Application has been given by Martinez, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee; (b) the Securities and Exchange Commission; (c) the trustee under the Note Indenture and the Cash Management Agreement; and (d) all other parties against whom Cozumel Caribe sought preliminary relief pursuant to Section 1519 of the Bankruptcy Code.

E.     No objections or other responses were filed that have not been overruled, withdrawn or otherwise resolved.

F.     The Chapter 15 Case was properly commenced pursuant to 11 U.S.C. §§ 1504, 1509 and 1515.

G.     The Concurso Mercantil Proceeding is a foreign proceeding pending in Mexico within the meaning of 11 U.S.C. § 101(23), where Cozumel Caribe's "center of main interests," as referenced in 11 U.S.C. § 1517(b)(1), is located, and therefore, the Concurso Mercantil Proceeding is a "foreign main proceeding" pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1).

H.     Martinez is a "person" pursuant to 11 U.S.C. § 101(41), is the duly appointed "foreign representative" of Cozumel Caribe, as such term is defined in 11 U.S.C. § 101(24), and has satisfied the requirements of 11 U.S.C. § 1515 and Bankruptcy Rule 1007(a)(4).

I.     Martinez is entitled to all of the relief set forth in 11 U.S.C. §§ 1520 and 1521(a)(4), (5), and (b), including, without limitation, the enforcement of the automatic stay, immediately upon entry of this Order.

J.     The relief sought in the Recognition Application is necessary to effectuate the purpose of Chapter 15, to protect Cozumel Caribe and the interests of its creditors, and is not manifestly contrary to the public policy of the United States.

K.     The relief sought in the Recognition Application will not cause undue hardship or inconvenience to parties-in-interest and, to the extent that any hardship or inconvenience may result, such hardship or inconvenience is outweighed by the benefits to Cozumel Caribe, its estate and its creditors.

BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Recognition Application is granted.

2.     The Concurso Mercantil Proceeding is recognized as a foreign main proceeding pursuant to 11 U.S.C. §§ 1517(a) and 1517(b)(1), and all the effects of recognition as set forth in 11 U.S.C. § 1520 shall apply.

3.     Upon entry of this Order, pursuant to 11 U.S.C. § 1520, the Concurso Mercantil Proceeding shall be given its full force and effect, and, among other things, (i) the protections of 11 U.S.C. §§ 361 and 362 applies to Cozumel Caribe and its assets in the United States; (ii) all persons and entities are enjoined from seizing, attaching and/or enforcing or executing security interests, liens or judgments against Cozumel Caribe's property in the United States or from

transferring, encumbering or otherwise disposing of or interfering with Cozumel Caribe's assets or agreements in the United States without the express consent of Martinez; and (iii) all persons and entities are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against Cozumel Caribe or its assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, security interest, lien or arbitration award against Cozumel Caribe or their assets or proceeds thereof.

4.      Martinez and Cozumel Caribe shall be entitled to the full protections and rights enumerated under 11 U.S.C. § 1521(a)(4), (5) and (b), and accordingly, Martinez: (i) is entrusted with the administration or realization of all or part of Cozumel Caribe's assets located in the United States; (ii) has the right to transfer such assets to Mexico for the express purpose of administering Cozumel Caribe's estate along with its other assets, in accordance with the Initial Mexican Order; and (iii) has the right and power to examine witnesses, take evidence or deliver information concerning Cozumel Caribe's assets, affairs, rights, obligations, or liabilities.

5.      Martinez is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order and the relief granted in the Initial Mexican Order.

6.      Martinez, Cozumel Caribe and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

7.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought

in and through the Chapter 15 Case, and any request by an entity for relief from the provisions of

this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

Dated: July __, 2010
     New York, New York

 

 

_____
UNITED STATES BANKRUPTCY JUDGE