UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

    COZUMEL CARIBE, S.A. de C.V.,

    Debtor in a Foreign Proceeding.

FOR PUBLICATION

Chapter 15

Case No. 10-13913 (MG)

**MEMORANDUM OPINION AND ORDER DENYING CTIM'S MOTION TO
TERMINATE THE RECOGNITION ORDER**

*A P P E A R A N C E S:*

SIDLEY AUSTIN LLP
*Attorneys for CT Investment Management Co., LLC*
787 Seventh Avenue
New York, New York 10019
By:    Lee S. Attanasio, Esq.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, PA
*Attorneys for Nemias Esteban Martinez Martinez, as the Foreign
Representative of Cozumel Caribe, S.A. de C.V.*
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
By:    Gregory S. Grossman, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

       Chapter 15 of the Bankruptcy Code, like the Model Law on Cross-Border Insolvency, is intended to facilitate cross-border cooperation in insolvency proceedings. One of the purposes of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor . . . ." 11 U.S.C. § 1501(a)(3). Other sections of chapter 15 provide for relief "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected," 11 U.S.C. § 1522(a), and allow additional assistance when necessary to "reasonably assure . . . protection of claim holders in the United States against prejudice and inconvenience in the processing of

claims in [a] foreign proceeding," *id.* § 1507(b)(2).  The Code, however, does not describe what a U.S. court should do when, after granting recognition to a foreign proceeding, the conduct of the foreign representative, or other parties in interest, flout the purposes of chapter 15.  The pending motion seeking to vacate recognition of a Mexican insolvency proceeding raises troubling questions about the conduct of a foreign representative in this chapter 15 case and in the ongoing Mexican proceeding, and requires consideration of the Court's role in protecting U.S. creditors.

      CT Investment Management Co., LLC ("CTIM") filed the *Motion to Terminate the Recognition Order and Related Relief* (the "Motion," ECF Doc. # 86), supported by the Declaration of Martin B. Jackson (the "Jackson Decl.," ECF Doc. # 87).  CTIM seeks to terminate, pursuant to Bankruptcy Code sections 1517(d) and 1506, this Court's order (the "Recognition Order," ECF Doc. # 45) granting recognition to the *concurso mercantile* proceeding in Mexico (the "Concurso Proceeding") and Nemias Esteban Martinez Martinez (the "Foreign Representative" in this chapter 15 case, and also the "Conciliator" in the Concurso Proceeding) as the duly recognized foreign representative in the chapter 15 proceeding of Cozumel Caribe, S.A. de C.V. ("Cozumel Caribe" or the "Foreign Debtor").  The Foreign Representative filed a response (the "Response," ECF Doc. # 93), supported by the Declaration of Alfonso Peniche (the "Peniche Decl.," ECF Doc # 93-1).  CTIM filed a reply (the "Reply," ECF Doc. # 94), supported by the Declaration of Lee S. Attanasio (the "Attanasio Decl.," ECF Doc. # 95).  The Court held a hearing on January 24, 2014, and ordered the parties to submit supplemental information.  On February 21, 2014, the Foreign Representative submitted supplemental information (the "FR Supp.," ECF Doc. # 100), and so did CTIM (the "CTIM Supp.," ECF Doc. # 101).

For the reasons explained below, the Court **DENIES** the Motion without prejudice. The Foreign Representative should take little comfort from the Court's ruling. The Motion raises very serious questions about the conduct of the Foreign Representative in this Court and in the Concurso Proceeding, as well as very serious questions about the conduct of the principals of the Foreign Debtor. This Court does not sit in review of the rulings and conduct in the Concurso Proceeding, or in other Mexican court proceedings relating to this matter. The Foreign Representative, without disclosing to this Court that he was doing so, has taken directly conflicting positions on material issues in this Court and in the Concurso Proceeding. If and when an order or judgment is entered in the Concurso Proceeding for which the Foreign Representative seeks recognition and enforcement, this Court can decide then whether to grant comity to the order or judgment. *See In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012). At the present time, though, the current status quo (with approximately $8 million held in a CTIM-controlled bank account in New York) sufficiently protects CTIM's interests.[1]

## I. BACKGROUND

The Court previously described the background of CTIM's efforts to obtain relief from Cozumel Caribe and its non-debtor affiliates and guarantors in an earlier opinion. *See CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96 (Bankr. S.D.N.Y. 2012) (the "Stay Decision"). Familiarity with that opinion is assumed. The underlying facts in this case are summarized here only to the extent necessary.

Cozumel Caribe, the sole debtor in the Concurso Proceeding, is a Mexican company that owns and operates the Hotel Park Royal Cozumel in Cozumel, Mexico. Cozumel Caribe's seven

---

[1] Whether the current protection will continue indefinitely, considering the extended proceedings in Mexico, is a question not raised on this record.

3

non-debtor affiliates (the "Non-Debtor Affiliates"),[2] also organized under the laws of Mexico, own and operate other resort properties throughout Mexico. Cozumel Caribe and the Non-Debtor Affiliates (together, the "Borrowers") are joint obligors on two promissory notes (the "Promissory Notes") in the aggregate amount of $103 million,[3] secured in part by hotel revenues that were required to be deposited in various lock box accounts, including a cash management account in New York (the "Cash Management Account"), now controlled by CTIM, as special servicer for the loan.[4] The Borrowers have defaulted on the loans; neither the Foreign Debtor nor the Non-Debtor Affiliates has made any debt service payments since 2010. Only Cozumel Caribe filed a bankruptcy proceeding in Mexico.

Non-debtors Pablo Gonzalez Carbonell ("Carbonell") and Grupo Costamex, S.A. de C.V. ("Grupo Costamex," and together with Carbonell, the "Guarantors") entered into a guarantee agreement (the "Guarantee Agreement"), guaranteeing the outstanding principal amount owing under the Promissory Notes together with all accrued and unpaid interest. The Guarantee Agreement expressly provides that it is governed by New York law, and the Guarantors agreed

---

[2] The seven Non-Debtor Affiliates are Promotora de Inmuebles del Caribe, S.A. de C.V.; Consorcio Imnobiliario Cancun, S.A. de C.V.; Desarrollo Turistico Piramides Cancun, S.A. de C.V.; Imnobiliaria Cancun Caribe, S.A. de C.V.; Comercializadora Y Desarro Lladora Ocean, S.A. de C.V.; Desarrolladora Imnobiliariadel Sur, S.A. de. C.V.; and Servicios Administrativos Etisa, S.A. de C.V.

[3] The loan amounts are actually stated in Pesos, but for purposes of this Opinion, the Court will use the approximate U.S. dollar equivalents.

[4] The Borrowers, on the one hand, and LaSalle Bank N.A. ("LaSalle" or the "Trustee"), on the other, entered into a note indenture, dated October 3, 2006 (the "Note Indenture"), and a cash management agreement, also dated October 3, 2006 (the "Cash Management Agreement," and together with the Promissory Notes and the Note Indenture, the "Loan Documents"), governed by New York law. Bank of America, N.A. ("BofA") is the successor by merger to LaSalle Bank N.A., as Trustee. BofA has been seeking to enforce the Loan Documents in Mexico. The $103 million loan was pooled with other similar financings, and interests were then sold to investors as commercial mortgage-backed securities.

4

to submit to the jurisdiction of New York courts for enforcement of the Guarantee Agreement. CTIM's efforts to recover against the Guarantors have so far been unsuccessful.[5]

In addition to not paying any debt service, the Non-Debtor Affiliates ceased depositing hotel revenues into the lock box accounts, despite their contractual obligations. In an *ex parte* order entered on May 27, 2010 in the Concurso Proceeding, the Third District Court for the State of Quintana Roo (the "Concurso Court") barred CTIM or any other party from taking any action to collect any of the debt from property of the Foreign Debtor or the Non-Debtor Affiliates, specifically including any funds in the Cash Management Account (the "May 27 Order," or the "Precautionary Measures"). These so-called Precautionary Measures remain in place and have so far prevented CTIM from applying any of the approximately $8 million currently on deposit in the Cash Management Account to pay down the debt. CTIM filed an adversary proceeding in this Court seeking to recover some or all of the funds in the Cash Management Account based on the loan defaults, but on the motion of the Foreign Representative, the Court stayed that action on the basis of comity to the May 27 Order. *See Cozumel Caribe*, 482 B.R. at 118.

---

[5] On September 13, 2010, CTIM filed a complaint against the Guarantors in the U.S. District Court for the Southern District of New York (the "District Court"), alleging breach of contract under the Guarantee Agreement. *See CT Inv. Mgmt. Co., LLC v. Carbonell*, No. 10-Civ.-6872 (LGS), ECF Doc. # 1, (S.D.N.Y. Sept. 13, 2010) (the "District Court Action"). The Guarantors did not appear to defend the District Court Action; however, before a default judgment was entered, the Foreign Representative appeared in the case and requested that the District Court extend comity to subsection (e) of the May 27 Order (as defined above), which prevented CTIM from seeking to exercise its rights under the Guarantee Agreement against the Guarantors. The District Court extended comity to the May 27 Order and stayed CTIM's action against the Guarantors. *See Carbonell*, 2012 WL 92359, at *4–6 (S.D.N.Y. Jan. 11, 2012). After the District Court Action was stayed, the Guarantors commenced an action in a Mexican court against BofA seeking to invalidate the Guarantee Agreement. The complaint was served on a bank teller in a Chicago branch of the bank; when no answer was filed, the Guarantors obtained a default judgment invalidating the Guarantee Agreement. *See Cozumel Caribe*, 482 B.R. at 117. The Foreign Representative claims that he was not involved in the Guarantors' efforts to invalidate the Guarantee Agreement; however, he *promptly* called that judgment to the attention of the judge in the Concurso Proceeding. The proposed plan filed in the Concurso Proceeding (but not yet approved) eliminates the obligations under the Guarantee Agreement. BofA has challenged the ruling invalidating the Guarantee Agreement based on the default judgment in still another Mexican court proceeding that is still pending.

## II. DISCUSSION

In this Motion, CTIM seeks an order terminating the Recognition Order. Under Bankruptcy Code section 1517(d), recognition of a foreign proceeding can be modified or terminated "if it is shown that the grounds for granting it were fully or partially lacking and or have ceased to exist," after consideration of prejudice to parties that have relied on the recognition order. 11 U.S.C. § 1517(d). *See also Cozumel Caribe*, 482 B.R. at 107–08 (recognizing the court's express authority to modify or terminate an order granting recognition); *In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP), 2011 WL 5855475, at *5 (Bankr. S.D.N.Y. Nov. 22, 2011) (stating that a recognition order could be terminated "in the interests of justice"). The same factors relevant in determining whether to grant recognition are therefore relevant in determining whether to terminate a recognition order.

Bankruptcy Code section 1517 sets out the requirements for a court to grant recognition of a foreign proceeding. CTIM focuses on the proviso in section 1517 that recognition is "[s]ubject to section 1506 . . . ." 11 U.S.C. § 1517(a). Under section 1506, a court can refuse to take an action governed by chapter 15 "if the action would be manifestly contrary to the public policy of the United States." *Id.* § 1506. Thus, a court can refuse to grant recognition of a foreign proceeding if doing so would be manifestly contrary to U.S. public policy.[6] CTIM contends that because a court may withhold recognition based on section 1506, a court may also terminate recognition if section 1506 is no longer satisfied, *i.e.*, if continued recognition would be manifestly contrary to U.S. public policy.

---

[6] Paragraph J of the Recognition Order entered in this case stated: "The relief approved in the Recognition Order is necessary to effectuate the purpose of Chapter 15, to protect Cozumel Caribe and the interests of its creditors, and is not manifestly contrary to the public policy of the United States." (Recognition Order ¶ J.)

6

According to CTIM, continued recognition of the Concurso Proceeding would be manifestly contrary to U.S. public policy because (1) the Foreign Representative listed CTIM's claim in the Concurso Proceeding's definitive creditor list at a fraction of the Debtor's $103 million debt to CTIM ($27 million instead of $103 million), notwithstanding the terms of the loan and the Foreign Representative's contrary representations to this Court; (2) the Foreign Representative used the Recognition Order to block enforcement of the Guarantee Agreement in the District Court Action, and the Foreign Debtor, Non-Debtor Affiliates, and the Guarantors thereafter sought to void the Guarantee Agreement in a Mexican court; (3) Grupo Costamex has used the stay obtained by the Foreign Representative in the District Court Action to try to transfer assets and cash to a new company for no consideration (the "Costamex Spinoff"), in contravention of the Guarantee Agreement; (4) the Foreign Representative has engaged in conduct that has delayed the Concurso Proceeding, causing an indefinite suspension of CTIM's enforcement rights; and (5) the Foreign Representative has failed to comply with its reporting requirements to this Court under both the Court's Stay Decision and Bankruptcy Code section 1518.

The Court is concerned by the inconsistent positions taken by the Foreign Representative in the chapter 15 case and in the Concurso Proceeding on the key issue of the amount of CTIM's claim. But CTIM has not shown that the Court's grounds for granting recognition have ceased to exist or that continued recognition would be manifestly contrary to U.S. public policy. It may be that the Foreign Representative or his counsel[7] should be subject to sanctions, but that is not presently before the Court, and vacating the Recognition Order at this stage of this case is not the appropriate sanction. Many of CTIM's contentions regarding the Foreign Representative's conduct were already raised by CTIM and considered by the Court in the Stay Decision. CTIM

---

[7]    Since the filing of this chapter 15 case, the Foreign Representative has switched counsel on three occasions.

7

now seeks another bite of the apple, but it cannot use this Court to invalidate or circumvent proceedings in the Mexican courts. CTIM is not entitled to relief in this Court because it feels slighted by decisions or actions in Mexican court proceedings—proceedings that remain open and ongoing, with multiple parties pursuing ancillary or appellate relief. Dissatisfaction with rulings of the lower Mexican courts is the proper subject for Mexican appellate proceedings, but does not implicate the Recognition Order.[8]

For example, CTIM contests the treatment of its claim in the Concurso Proceeding. According to CTIM, the Foreign Representative has scheduled its debt as only $27 million, despite repeated representations to this Court that the amount of the debt was $103 million.[9] (*See* Motion ¶ 24; CTIM Supp. at 2–5 (identifying numerous specific representations by the Foreign Representative in the chapter 15 case that the amount of the debt was scheduled as a $103 million secured claim).) The conduct of the Foreign Representative is troubling, but CTIM was aware at least since April 2012 of the proposed treatment of the claim in the Concurso Proceeding as a $27 million claim—CTIM's counsel cross-examined witnesses on the point at the evidentiary hearing leading to the Stay Decision. (*See* Adv. Pro. No. 11-02936, Apr. 11, 2012 Hr'g Tr. 40:22–42:25.) Both CTIM and BofA (as Trustee) have been challenging that proposed treatment in the Mexican courts, so far unsuccessfully. Regardless, the Court did not premise recognition of the Concurso Proceeding on the Foreign Representative's proposed treatment of the CTIM claim, so a change in treatment of CTIM's claim does not warrant

---

[8]     *But cf. SNP Boat Serv. S.A. v. Hotel Le St. James (In re SNP Boat Serv. S.A,)*, 453 B.R. 446, 448 (Bankr. S.D. Fla. 2011) ("When a foreign representative obtains recognition of a foreign main proceeding, and then proceeds to stonewall all efforts to assist judicial determination as to whether due process was afforded, the wisdom of an American court continuing to recognize the foreign main proceeding becomes questionable."), *rev'd in part, aff'd in part, and remanded*, 483 B.R. 776 (S.D. Fla. 2102).

[9]     Not only has the Foreign Representative scheduled the debt at $27 million rather than $103 million, but the plan proposed in the Concurso Proceeding (but not yet approved) also would apparently discharge the full amount of the liability above $27 million.

8

termination of recognition at this time. CTIM and BofA have not exhausted their remedies in the Mexican courts where this dispute belongs; at least until the Foreign Representative seeks an order extending comity to a final Mexican court order or judgment, this Court need not decide whether to give effect to the ruling. CTIM holds approximately $8 million in an account in New York; it has not alleged that the Foreign Debtors or the Non-Debtor Affiliates hold any other property in the United States. Whether its claim is $27 million or $103 million, CTIM's interests are sufficiently protected as long as the funds remain in the New York account. *See Cozumel Caribe*, 482 B.R. at 111 (stating that "the Court concludes that CTIM is sufficiently protected as a temporary matter as long as the funds remain in the United States").

Nor should recognition be terminated on the basis that the orders of the Mexican courts are manifestly contrary to U.S. public policy. Granting comity to orders of a foreign court is not an all or nothing exercise—some orders or judgments in the same case or proceeding may merit comity while others may not. *Cozumel Caribe*, 482 B.R. at 110 ("Granting comity to a *foreign representative* by providing access to courts in the United States is very different from granting *the request* by the foreign representative to extend comity to a foreign law, court order or judgment."). The public policy exception embodied in section 1506 should be "narrowly interpreted, as the word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (citing H.R. Rep. No. 109-31(I) at 109, *reprinted in* 2005 U.S.C.C.A.N. 88, 172). "The relief granted in the foreign proceeding and the relief available in a U.S. proceeding need not be identical." *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010). "A U.S. bankruptcy court is not required to make an independent determination about the propriety of individual acts of a foreign court." *Id.* "To inquire into a

9

specific foreign proceeding is not only inefficient and a waste of judicial resources, but more importantly, necessarily undermines the equitable and orderly distribution of a debtor's property by transforming a domestic court into a foreign appellate court where the creditors are always provided the proverbial 'second bite at the apple.'" *SNP Boat Serv. S.A. v. Hotel Le St. James (In re SNP Boat Serv. S.A.)*, 483 B.R. 776, 786 (S.D. Fla. 2011); *see also Cozumel Caribe*, 482 B.R. at 114–15 (explaining that comity is usually granted so long as the foreign proceedings are procedurally fair and do not contravene the laws or public policy of the United States).

Accordingly, this Court will not withdraw recognition because of the Concurso Court's treatment of the CTIM claim, particularly since any decisions made in the Concurso Proceeding may be subject to further proceedings in the Mexican courts. *See, e.g.*, *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A.de C.V.*, 412 F.3d 418, 421 n.1 (2d Cir. 2005) (while U.S. action was pending, the Mexican federal court reversed a lower Mexican court's determination regarding secured status of creditor). In the event the Foreign Representative seeks enforcement from this Court of an order or judgment issued by the Concurso Court, the Court will consider whether the relief is available under chapter 15. *See, e.g.*, *Vitro*, 701 F.3d at 1054 (stating that "Chapter 15 does impose certain requirements and considerations that act as a brake or limitation on comity, and preclude granting the relief requested by a foreign representative"). If the Foreign Representative or his counsel has engaged in misconduct in this Court, there are other means to address such issues, such as FED. R. BANKR. P. 9011, or other sanctions regimes, none of which are before the Court on the present Motion. While there may be extreme circumstances in which dismissal of a case is an appropriate sanction for misconduct, as is true for any litigation filed in a federal court, the Court does not believe that such action is appropriate in this case on the present record.

10

CTIM also takes issue with actions of the Guarantors and the Foreign Representative seeking to invalidate or evade enforcement of the Guarantee Agreement. These issues do not implicate the Court's Recognition Order and are not properly before the Court. Although the Foreign Representative appeared in the District Court Action, the District Court's decision to extend comity to the Concurso Court's May 27 Order, and to continue to do so now, should not be controlled by the status of recognition in this chapter 15 case. Neither the Recognition Order nor the Stay Decision in this case compels the District Court or any other court to extend comity to any decision or order in the Concurso Proceeding. *See Cozumel Caribe*, 482 B.R at 108–11 (holding that a grant of recognition does not mandate the extension of comity to a foreign law, court order, or judgment). Likewise, any other proceedings in Mexican courts seeking to invalidate the Guarantee Agreement do not bear on this Court's recognition of the Concurso Proceeding.

For the same reason, the proposed Costamex Spinoff is not cause to terminate recognition. The Foreign Representative maintains that he has no involvement with the Costamex Spinoff or the related injunction action filed in Mexico by CTIM. (FR Supp. at 4.) Whether the Foreign Representative is involved in these issues is irrelevant; Grupo Costamex is a non-debtor, and enforcement of the Guarantee Agreement is not an issue pending before this Court.

CTIM also alleges that the Foreign Representative has engaged in dilatory conduct in the Concurso Proceeding, causing an indefinite suspension of CTIM's enforcement rights. As the Court stated in the Stay Decision: "CTIM may be dissatisfied with the status, pace or a ruling in the Concurso Proceeding, but that alone does not justify permitting CTIM to proceed with its adversary proceeding in this Court." *Cozumel Caribe*, 482 B.R. at 111; *see also Altos Hornos*,

11

412 F.3d at 428–29 (extending comity and deferring resolution of underlying issues to Mexican court, despite the secured lender's argument that doing so would be procedurally unfair because of a six-year delay in resolving Altos Hornos's debts, and despite a governing New York choice of law and choice of forum provision).

Finally, CTIM contends that recognition should be terminated due to the Foreign Representative's failure to inform this Court of significant developments in various Mexican courts. The Foreign Representative maintains that he is not a party to, and was not involved in, any proceedings outside of the Concurso Proceeding involving the Guarantors or the Non-Debtor Affiliates. The Court has doubts whether the Foreign Representative was truly unaware of these developments; when the default judgment invalidating the guarantees was entered, the Foreign Representative *promptly* advised the Concurso Court of the development. Even so, the Court finds that the failure of the Foreign Representative to inform the Court of these developments up to this point does not warrant termination of recognition. Pursuant to this Order and the requirements of section 1518, however, the Foreign Representative *shall* keep this Court informed of any developments involving not only the Foreign Debtor, but also the Guarantors and the Non-Debtor Affiliates, to the extent those developments affect the rights of CTIM or other creditors of the Foreign Debtor in this chapter 15 case. In light of the Foreign Representative's previous disregard of his reporting requirements, *see Cozumel Caribe,* 482 B.R. at 107, it is hereby **ORDERED** that the Foreign Representative shall file written status reports with this Court on developments in the Concurso Proceeding upon any significant occurrence in that case, but no less often than the last day of each calendar quarter beginning on June 30, 2014. CTIM or any other party in interest may also file status reports responding to any report filed by

the Foreign Representative no later than fourteen (14) days after the Foreign Representative submits his report.

### III.    CONCLUSION

For all of the above reasons, the Motion is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated:  April 21, 2014
          New York, New York

*___Martin Glenn_____*
MARTIN GLENN
United States Bankruptcy Judge